**Corine WARE, Plaintiff,**

v.

**WYOMING BOARD OF LAW EXAMINERS, Defendant.**

**No. 96–CV–299–J.**

United States District Court, D. Wyoming.

Aug. 5, 1997.

Corine Ware, Cheyenne, WY, pro se.

Elizabeth Zerge, Herschler, Freudenthal, Salzburg, Bonds & Zerga, Cheyenne, WY, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S COUNTER–MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This case is before the court on defendant's Motion for Summary Judgment and on plaintiff's Counter Motion for Summary Judgment. The court has considered the entire file and is fully advised.

### INTRODUCTION

Plaintiff Corine Ware suffers from multiple sclerosis (MS) and applied to take the Wyoming State Bar exam. She alleges that defendant Wyoming Board of Law Examiners (the Board) violated the Americans With Disabilities Act (ADA) by refusing to provide her reasonable accommodation that would allow her to take the Wyoming State Bar Exam. She also alleges that the Board's actions have discriminated against her on the basis of race and disability in violation of the Privileges and Immunities Clause and the Due Process Clause of the United States Constitution.

The Board contends that it has provided all reasonable accommodations recommended by plaintiff's treating physician. The Board contends that it treated plaintiff fairly and did not discriminate against her on the basis of disability, race or residence.

Defendant moved for summary judgment. Plaintiff, who is proceeding pro se, opposed the motion by filing a Counter Motion for Summary Judgment.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment will be granted if "the pleadings, depositions, ... and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A 'material' fact is one 'that might affect the outcome of the suit under the governing law.'" *Farthing v. City of Shawnee,* 39 F.3d 1131 (10th Cir.1994) quoting *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). And "a 'genuine' issue is one where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* The court views the evidence in the light most favorable to the nonmoving party. *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "The moving party bears the initial burden of showing that there is an absence of any issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993). "To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings." *Id.* citing Fed.R.Civ.P. 56(e) and *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The mere fact that both parties have filed motions for summary judgment does not constitute proper grounds for a decision that no genuine issues of material fact exist, but "the court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 2720, at 23 (1983).

## UNDISPUTED FACTS

Plaintiff is a resident of Wyoming and a graduate of the University of Utah College of Law. In 1995, Ms. Ware took the Utah State Bar examination with accommodations granted by the Utah State Bar. She passed a portion of the Utah State Bar exam but failed the Multistate portion of the exam. Ms. Ware then moved to Wyoming.

Defendant Wyoming Board of Law Examiners is a governmental entity of the State of Wyoming, and serves as an arm of the Wyoming Supreme Court. Its duties include the drafting, administration and grading of the two-day Wyoming State Bar Licencing Exam. It is also charged the duty of receiving, reviewing and investigating applications for admission to the Wyoming State Bar, for the purpose of recommending or withholding recommendations for admissions to the Wyoming Supreme Court. Wyo. Rules & Procedures Governing Admission to Practice of Law (W.R.G.A.P.L.). The expenses of the Board are paid out of the state treasury, Wyo. Stat. § 33–5–103 (1977), and the Board submits an annual budget to the State Legislature for appropriation (Lewis Affidavit[1] ¶ 2.) The Wyoming Supreme Court selects the licenced Wyoming attorneys as Board members and they serve three year terms. Wyo. Stat. § 33–5–101. The Board functions on behalf of the Wyoming Supreme Court in matters pertaining to the admission to the Wyoming State Bar. Wyo. Stat. § 33–5–101. R. Wyo. S.Ct. 5. The Wyoming Supreme Court maintains ultimate authority to determine matters governing admission of attorneys to the Wyoming State Bar but delegates powers to the Board to act on its behalf. R.W.S.Ct. 5. The Wyoming Supreme Court has given the Board specific authority to act on its behalf in matters governing accommodations for disabled bar applicants. W.R.G.A.P.L. 212.

As part of its duties, the Board is required to determine pursuant to W.R.G.A.P.L. 212, whether or not to grant special accommodations in testing to applicants who claim disability.

On December 28, 1995, Ms. Ware applied to the Wyoming State Bar for testing and admission pursuant to the bar exam scheduled for July 30 and 31, 1996. She stated in writing that she was disabled and wanted the following accommodations in the testing procedure.

1. Time and a half to complete each session of Wyoming portion of the bar exam with:

 a. A large print test booklet.

 b. A separate room to take the test.

 c. One bathroom break.

---

1. Mr. Tony Lewis is the Board's Executive Secretary. His affidavit will be cited as Lewis ¶——.

Exhibits attached to his affidavit will be cited as Lewis, Ex. ——.

d. A legally trained Scribe or person with experience being a Scribe for law students/bar examinees.

e. The Scribe must be able to type on a computer and spell check and be able to keep up with the applicant.

2. Time and a half to complete each session of the multi-state bar exam with:

a. A separate room to take the test.

b. One bathroom break.

c. Someone to record the answers on the computer sheet.

(Lewis, Ex. 1).

In her application, Ms. Ware explained that multiple sclerosis had seriously impaired the fine motor skills in both hands. She explained she was ambulatory but not without periods of severe difficulty. In support of her requests for accommodations, she supplied a letter from her law school's Associate Dean for Student Affairs. *Id.* The Associate Dean's letter stated that because of Ms. Ware's requests for accommodations at the Utah Law School and her documented disability she had been permitted to use a computer, and was allotted time and a half on college of law essay exams. On multiple choice exams where computer sheets were utilized the University of Utah Law School permitted plaintiff to circle the appropriate answer on the actual exam, rather than the computer sheet. *Id.*

Plaintiff's application to take the Wyoming Bar Exam did not comply with the two Wyoming attorney certification requirements of R.W.S. Ct. 5. She asked for waiver of this provision because she did not personally know any Wyoming attorneys. (Lewis, Ex. 14).

Plaintiff's application also did not include a passing score on the Multistate Professional Responsibility Examination. Plaintiff now says that she received a passing score, Pl's Ex. G, but the National Conference of Bar Examiners sent the wrong score, a failing score to the Wyoming State Bar. Id.

The Board also found that plaintiff's application and the Conference Bar Examiners' character report raised factual issues which would require submission of further information. (Lewis, ¶ 14) These issues include credit matters, misdemeanor criminal charges and plaintiff's having been banned from an Air Force Base. *Id.* The Board usually raises issues relating to the character and fitness reports of applicants just prior to or just after the bar exam. (Lewis, ¶ 13) Every applicant who has similar issues raised by their application is questioned further by the Board. *Id.* ¶ 15. The Board has not inquired further into these matters because its members did not know if Ms. Ware was going to continue to seek admission to the Wyoming Bar.

In April of 1996, Mr. Lewis, on behalf of the Board, requested that plaintiff comply with then existing W.R.G.A.P.L. 212(c) and supply medical documentation certifying her impairment and the need for accommodations. (Lewis, Ex. 2).

On April 8, 1996, Mr. Lewis sent Ms. Ware a letter advising her that W.R.G.A.P.L. 212 was under revision and that the Board had determined that any costs associated with any special accommodation of her condition would be covered by the Board once her disability had been properly certified. (Lewis, Ex. 2) On May 13, 1996, Mr. Lewis sent Ms. Ware a letter advising her that she would be governed by the substantive provisions of the 1992 version of W.R.G.A.P.L., 212 and not the 1996 version. (Lewis, Exs. 4 and 6).

On April 22, 1996, Mr. Lewis received a letter from Ms. Ware's treating physician, Dr. Daniel Johnson of Cheyenne, Wyoming. (Lewis Ex. 3). Dr. Johnson verified that he was plaintiff's treating physician and that she suffered from multiple sclerosis. Dr. Johnson stated that because of Ms. Ware's condition she would not be able to write a test in a normal fashion and that it would be appropriate for her to have a large print test. He stated she would also need a bathroom break during the test. He affirmed that she would need to dictate her answers rather than write them and he supported her request for examination in a separate room. He stated that her condition would lead to an increase in the amount of time required for her to take the test, but he did not identify the amount of additional time she would need. *Id.*

On May 21, 1996, Mr. Lewis sent Ms. Ware a letter advising her that the informa-

tion submitted by Dr. Johnson was incomplete as he did not address each of the special testing conditions she requested and that further information would be needed from the doctor. Mr. Lewis wrote that it might be helpful for the Board to know what accommodations were granted to her when she took the Utah State Bar examination. (Lewis, Ex. 6).

In response, plaintiff supplied the Board with the list of accommodations afforded her when she took the Utah State Bar exam which were: time and one-half to complete each session of the Utah and Multistate Bar Exam and large print test booklets. Originally the Utah State Bar approved her use of a voice activated computer but later changed its approval to a scribe when it was determined the computer would not be adequate. The Utah State Bar provided her with a separate testing room. (Lewis, Ex. 10).

In addition, plaintiff submitted a letter from a physician who treated her in Utah, Dr. James Burns, M.D. The letter had been directed to the Utah State Bar Examiners in support of her request to the Utah State Bar for accommodations. In that letter Dr. Burns stated to the Utah State Bar Examiners that plaintiff suffered from multiple sclerosis and he felt she had reasonably requested a number of accommodations, and that he would appreciate serious consideration of these requests. *Id.*

Plaintiff also provided Mr. Lewis with a Limited Medical Authorization and Release allowing him to contact Dr. Johnson for the specific purpose of facilitating her request for special accommodations. (Lewis, Ex. 8).

Mr. Lewis then spoke directly with Dr. Johnson about how much additional time Ms. Ware should be afforded on the essay and multiple choice exams if she opted to write the answers to the test and how much additional time should be afforded to plaintiff if she chose to dictate the answers to the test. On June 3, 1996, Mr. Lewis wrote Dr. Johnson explaining the test and soliciting information on her need for accommodation. That letter reiterated what Dr. Johnson had told Mr. Lewis in their discussion—that plaintiff needed an extra 5–10 seconds per page for page turning and that plaintiff needed bathroom breaks. The June 3, 1996 letter asked Dr. Johnson to put his recommendations in writing. The letter also outlined the test procedures and asked that Dr. Johnson address those procedures specifically when recommending accommodations as follows:

> Again, the test is comprised of two parts administered over two days. The first day's test is an essay test consisting of 11 questions. The applicant must answer ten of those, and has approximately 24 minutes to respond to each one. The questions, in large-typeface, will likely be presented in a thirty to thirty-five page booklet, and answers to each question average 2 to 2.5 pages in length on legal notebook-size paper. The applicant has a total time of four hours for the test. There is a built-in element of pressure due to the tight time constraints for response. Considering this framework, and considering large type face will be used for the questions, please advise me what tasks would require more time for her to write this part of the test and how much extra time is reasonable without allowing an advantage not shared by the rest of the examinees. Considering she is allowed to dictate her answers to a legal reporter, how much time may be needed.

> The multiple choice test is administered the second day of the examination in two three-hour segments. Large font type will again be available. Each question (of one to three sentences in length) has four possible one sentence answers (on average). The booklet for each three-hour portion of the test contains one hundred questions. The total length of each booklet may be 50–60 pages. Applicants are required to fill in circles corresponding to correct answers with a #2 pencil. Considering these elements, what would the tasks be that involve extra time or other accommodations involved with Ms. Ware writing the test. What should be considered if she is allowed to dictate her answers.

> Dr. Johnson, I sincerely appreciate your assistance to the board in this regard. Board members simply do not have the expertise to evaluate this type of situation on their own. If I can provide you with

any additional information about the test or the testing facility, please let me know. Lewis, Ex. 11.

Based upon Dr. Johnson's oral recommendations as conveyed by Mr. Lewis the Board voted to allow plaintiff the following accommodations.

1. A separate room for all tests which would accommodate a court reporter and technical equipment.

2. A court reporter for the essay portion of the test with real time capabilities and a large computer screen set with large type to allow plaintiff simultaneous viewing of the transcription.

3. A large print exam, with Ms. Ware choosing the optimal print size on both the essay and multi-state portions of the exam.

4. An additional 10 seconds per page of each essay question.

5. Two bathroom breaks of 15 minutes each on the essay portion.

6. On the multiple choice, the Board allowed the option of viewing questions in large type or having them read via audio tape.

7. Answers to the multiple choice could, at Ms. Ware's choice, be marked on the exam or dictated.

8. Ten additional seconds per page of the multiple choice exam were granted and ten additional seconds per written answer on the exam, if she did not choose a stenographer for the multiple choice.

9. One bathroom break of 15 minutes per 3 hour portion of the multiple choice portion.

(Lewis, Ex. 12A).

The Board declined to allow Ms. Ware time and a half on the essay portion "since it feels the pace of dictation is faster than handwriting the test and should allow for whatever additional time may be necessary to make clerical correction and communicate with the reporter." (Lewis, Ex. 12A p. 2). The Board further stated:

In regards to your request that you be provided additional time to compare your test responses with transcriptions, the board feels that accurate transcription should be its responsibility in providing special accommodations and that you should be afforded protection in that regard. The board feels that the best way to ensure this is to <u>audiotape</u> those portions of either test which you dictate. Should you choose to indicate your multiple choice answers on the test booklet, <u>the board has directed that I [Mr. Lewis] be present with the stenographer to transfer the answers to the computerized grading sheet</u>, and that copies of both the test booklet and grading sheet be preserved in the event you request a subsequent regrade of that test.

\* \* \* \* \* \*

You may also wish to familiarize yourself with the technology involved with these accommodations, and our office can assist you with any necessary demonstrations.

Finally, in regard to your request for waiver of attorney certification, the board has denied the waiver, but will allow me [Mr. Lewis] to assist you in locating attorneys willing to provide you with the required references. Please contact me if you wish that assistance. I would be pleased to help you.

*Id.* (Underlined emphasis added).

After the Board made its determination, it received Dr. Johnson's June 19, 1996, letter putting his recommendations into writing as follows:

Regarding the first day's test of essay questions, I find it difficult to predict how long Ms. Ware would need if she were to write the answers herself. Her handwriting has deteriorated considerably since her diagnosis of multiple sclerosis, and I am not sure it is reasonable to expect her to write answers of 2 to 2.5 pages in length for each question. If she were to undertake this, I would allow her at least 50% more time than the other applicants. However, I suspect that having her dictate the answers to a court reporter would be much more practical. The dictations itself probably would not take any longer than a normal applicant would take in writing the answer by hand, though during this part of the examination Ms. Ware would need bathroom breaks (perhaps two breaks lasting 10–15 minutes each). <u>Since turning</u>

pages in a question book takes longer for Ms. Ware (and also takes longer if she has to direct someone else to turn the pages for her), I believe that adding an extra 5–10 seconds per page is also necessary. Regarding the multiple choice part of the examination, it is not entirely clear to me whether Ms. Ware can reliably blacken in small ovals on a multiple choice form. If she were to do this herself, I believe that allowing at least an extra 20 seconds per question would be reasonable, as both blackening in the ovals and erasing any mistakes would be slow tasks for her. If instead someone else were to blacken in the ovals for her, this extra time could be shortened to five to ten seconds per question to allow time for her to relay her answers to someone else, and have that other person blacken the ovals. She will again need an extra five or ten seconds per page to turn pages, plus an extra 10–15 minutes during each of the three hour segments for a bathroom break. I again emphasize that Ms. Ware has no mental incapacity. She is physically slowed by her multiple sclerosis, and the recommendations above are reasonable to put her on an even footing with the other applicants.

Lewis, Ex. 14 (underlined emphasis added).

In June of 1996, Mr. Lewis met with Ms. Ware and a court reporter at the court reporter's office to allow Ms. Ware to determine whether utilization of the court reporter's real time and the computer screen were adequate. (Lewis, Ex. 13) In her Amended Complaint, Ms. Ware alleges that during this meeting Mr. Lewis suggested that she practice working on an actual exam question (presumably from a past exam) and that she refused this offer.

On July 1, 1997, Ms. Ware wrote the Board and stated she was appealing its initial accommodation decision and she was also requesting a change in testing accommodations. She enclosed a copy of a government publication on testing accommodations. Testing Accommodations for Persons with Disability: A Guide for Licensure, Certifica-

tion, and Credentialling (hereinafter the Testing Accommodations Guide).[2]

In her appeal plaintiff stated:

I _do not_ object to the use of a court-reporter as a scribe. However, I strongly object to the use of the real-time computer. The screen on that computer was too dark and could not be lightened, the fonts could not be changed to a larger print (14 pt). If this problem can be fixed then I would have no problem with it.

The Board stated its decision relied on the recommendations of Dr. Johnson. We know for a fact that is not true. He sent you **three** letters supporting my request for accommodation. He also sent you the Exhibit C form. But none of this was good enough. Then you wrote Dr. Johnson and asked him how long it takes me to turn a page. Ah! The magic answers you feel legally justify denying accommodations.

Well, think again. The ADA of 1990 specially lists MS as a covered disability. Any right-thinking Judge will take judicial notice of this fact. You have the letter from Dr. Burns to the Utah Bar. You have the letter from the Utah Bar which stated the schedule for accommodations. The bar exam is not a "skill" oriented test. I refuse to take the Wyoming Bar Exam without my legally entitled, proper, accommodations. It is not fair for me to do so.

(Lewis, Ex. 15) (bold emphasis in original, underlined emphasis added).

The changes plaintiff added to her previously requested accommodations were:

1. That she be given two bathroom breaks during each session of the exam rather than one as previously requested.

2. That the testing venue be changed from Laramie to Cheyenne.

3. That on the multi-state exam she be given a large print computer answer sheet rather than her prior request that she be permitted to circle the answers in the test booklet.

---

**2.** Plaintiff's Ex. 39. This exhibit and all of the other exhibits plaintiff designated as part of her Counter–Motion are attached to her Motion for

Preliminary Injunction filed on November 21, 1996.

In addition, she reiterated her prior request that she be given time and one-half for the exam. The request for changed accommodations stated:

Finally, I am requesting to be tested in Cheyenne. I cannot drive to Laramie, Wy. I am not going to risk my life or my health trying to make such an unnecessary journey. I am too light-headed and heat sensitive. If I were to go to Laramie, I would have to hire a service too [sic] drive me to Laramie the day before the exam and bring me home. I would have to take taxis back and forth to the law school. To be on the safe side, I would have to take my wheelchair. I would have to do without handrails and grab bars suited for my needs. A wheelchair accessible hotel room, if one exists in Laramie, is not a[sic] properly adapted for my needs.

*Id.*

On July 9, 1996, the Board received an additional document from Dr. Burns of Utah, plaintiff's former treating physician, which stated that due to Ms. Ware's multiple sclerosis she had to use crutches to assist her in walking, she has some difficulty with arm and hand coordination and she suffers from fatigue. Dr. Burns stated it would be "helpful for Ms. Ware to have some accommodations made during her taking of the Wyoming Bar Exam." He further opined:

I believe Ms. Ware is a very conscientious individual. In my opinion, she is not trying, in any way, to take advantage of the situation to gain an unfair advantage in taking the bar exam. I believe she does indeed need some accommodation to level the playing field due to her neurologic disorder.

(Lewis, Ex. 17).

Although he recommended accommodation, Dr. Burns did not identify what those accommodations should be. *Id.*

Along with Dr. Burns's materials plaintiff sent a letter stating, "This will be the last document I will submit to the Board regarding testing accommodations." (Lewis, Ex. 17).

On July 10, 1996, the Board responded to plaintiff's appeal and her change in requested accommodations. It denied the change in test site location on grounds that it was untimely and was not supported by medical documentation. Under the rules, requests for special accommodation had to be received concurrently with her application to take the bar, the deadline for which was May 15, 1996. The Board stated:

There are provisions for making emergency request for accommodations, but the board, having already received and decided on your original petition, does not feel your subsequent request is based on emergency circumstances or a sudden, medically verified change in circumstances.

In addition, to the untimeliness of your changed request in which you request a change in location of the test, the board notes that your request is unsupported by proper documentation. Consequently, your request for an alternative test location was denied and the board will expect to administer the test at the University of Wyoming Law School, where it has already made arrangements for you.

The Board, however, is not precluded from considering additional information and making what it feels are necessary or appropriate changes in the accommodations. In that regard the board reviewed your physician's June 19, 1996 letter to the law examiners, in response to the board's letter to him of June 3, 1996. Previously the board had considered the written and verbal advice of Dr. Johnson, which is entirely consistent with his June 19, 1996 letter except in regard to his assertion that an additional 20 seconds per question should be allowed on the multi state bar exam. That is new information not previously provided to the board.

In discussing the wording of your physician's written advice of June 19, 1996 concerning the time allocated for bathroom breaks, the board resolved to modify its initial accommodation to provide for the allowance of a total number of minutes for each portion of the test, which will allow you to make use of any time left over for one break to carry over into additional time allowed for one or more subsequent bathroom breaks.

\* \* \* \* \* \*

[T]he board has voted to allow you an aggregate extension of thirty minutes, to be used for two or more bathroom breaks as may be necessary. You should understand that all examinees are allowed as many bathroom breaks as they wish to take, but that they are not allowed any extended time for them. The board, in making this aggregate allowance, [of thirty minutes], is relying on the advice of your physician regarding your physical limitations and the extended time that may be necessary for you to make the trips. There will be a restroom in close physical proximity . . .

\* \* \* \* \* \*

You may take additional breaks with no extra allowable time. . . .

Our office has not received a request of assistance from you [on the attorney certification] nor the required certification. Please let me [Mr. Lewis] know, at your earliest convenience whether you want my assistance in fulfilling this requirement. Otherwise, the board will expect to receive these certificates prior to the July examination.

(Lewis, Ex. 18).

Thereafter the Board made arrangements for the accommodations including retaining and paying a court reporter for appearance in Laramie at the July exams. (Lewis, ¶¶ 12 and 13).

Plaintiff did not appear for the scheduled exams in July 1996. She never completed the Wyoming Two Attorney Certification Rule. She has not, to date, supplied the Board with a passing MPRE score. (Lewis, ¶ 13).

Because plaintiff did not elect to take the exam as scheduled and has not scheduled a time to take the exam, the Board has taken no further steps to address questions raised by her National Conference Bar Examiner's Character Report and her application for admission.

Plaintiff appealed the Board's decision regarding the need for certification by two Wyoming attorneys to the Wyoming Supreme Court. It ruled that it would not waive that provision.

Each Board member has submitted an affidavit stating that they were unaware of Ms. Ware's color and national origin at the time they decided her accommodation requests. Ms. Ware alleges that they should have been aware of her race from information on her application.

All accommodations specifically recommended by Ms. Ware's physician, Dr. Johnson, were allowed by the Board. Ms. Ware's other physician, Dr. Burns, made no specific recommendations.

The Board granted another applicant, a Caucasian disabled person, various accommodations, all of which were recommended by that person's physician. The extent and nature of these accommodations and the medical documentation supporting these accommodations are, as cited by plaintiff, attached to Defendant's Notice of Compliance with Court Order Re: Discovery, filed April 23, 1997.

On August 13, 1996, Mr. Lewis wrote to plaintiff and noted her failure to appear at the bar exam and further stated:

As a consequence of your failure to take the bar exam as originally scheduled, it is the understanding of the Wyoming State Board of Law Examiners that it is no longer your intention to seek admission to the Wyoming State Bar and your application has been deemed withdrawn. In light of such fact, it will not be necessary to further examine or investigate the character and fitness issues raised by your application and the materials you submitted.

(Lewis, Ex. 19).

This letter was in error regarding the withdrawal of Ms. Ware's application. On May 16, 1997, six months after this lawsuit was filed, Judith Studer, the Chairperson of the Wyoming State Board of Law Examiners wrote to clarify the Board's position:

The Board of Law Examiners was informed by its attorney that you believe your application with the Supreme Court for admission has been withdrawn and that you are relying on Tony Lewis's letter to you of August 13, 1996 for that impression. The letter was intended to convey the message that because you failed to appear for the test or notify the State Bar office to

cancel the accommodations for the test, the Board would consider that you had withdrawn from the July, 1996 test only, and not the overall application process.

This letter is to notify you that your application for admission to the bar and payment of applicable fees are still on file with the Court. You remain eligible to take the bar examination twice for the fees you have paid, so long as the application to take the second test is received within a year after having taken the first test. Thus far, you have not taken your first examination.

(Lewis, Ex. 20).

Ms. Ware made a complaint to the United States Department of Justice about the Board's decision. The timing of this complaint is not clear from the record. The Department of Justice apparently concluded that the Board acted in accordance with the ADA. (Lewis, ¶ 19).

As noted, the Board's actions regarding applicants with disabilities are governed by Rule 212. The current and former Rule 212 provides that at the request of the Board the applicant may be required to submit to testing by an expert of the Board's choosing.

The Board has never requested that Ms. Ware undergo a medical examination. The Board does not dispute that plaintiff's multiple sclerosis is a disability within the meaning of the ADA or that she is need of some accommodation in order to take the Wyoming bar

## PLAINTIFF'S CLAIMS

Plaintiff brings seven claims in her amended complaint.

Count 1. Seeks declaratory relief that the 1992 version of Rule 212 is invalid under the ADA and also an injunction prohibiting defendant from enforcing that version. Ms. Ware contends that former Rule 212 is facially invalid under the ADA as follows:

 a. It is preempted by the ADA and therefore its very existence burdens disabled persons.

 b. That charging disabled applicants for accommodations or for an exam violates the ADA.

 c. The setting of a time limit for emergency requests for changes in accommodations violates the ADA.

Count 2. Seeks declaratory relief that the 1996 version of Rule 212 is invalid under the ADA and also seeks an injunction prohibiting defendant from enforcing that version. This count contends that current Rule 212 is facially invalid and violates the ADA as follows:

 a. By restrictively defining disability in subsection (b)(1).

 b. By reserving the right to require certain disabled applicants to undergo medical examinations.

 c. By reserving the right to require the release of confidential medical, educational psychological records.

Count 3. Seeks injunctive relief, civil penalties and a claim for individual fines for the alleged violation of the ADA in plaintiff's particular case.

Count 4. Seeks damages for intentional infliction of emotional distress.

Count 6.[3] Seeks damages pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983 alleging discrimination based on race and national origin.

Count 7. Seeks damages directly under the Privilege and Immunities Clause of Article IV of the United States Constitution.

This count contends that Rule 203 requiring certificates of two members of the Wyoming State Bar violates the Privileges and Immunities clause because it is "just another way of requiring residency" and therefore the application of the Rule to her violated her rights.

Count 8. Seeks damages directly under the Fourteenth Amendment due process clause for alleged violations of due process.

---

**3.** There is no count five in the Amended Complaint.

## DISCUSSION

*Eleventh Amendment Immunity*

Defendant moves to dismiss counts four, six, seven and eight on the grounds that it is a state entity and has Eleventh Amendment immunity from suit in federal court.

■■■ The Eleventh Amendment to the United States Constitution bars a suit for damages against a state in federal court absent a waiver of immunity of the State or abrogation of immunity by Congress. *Watson v. University of Utah Medical Center*, 75 F.3d 569, 574 (10th Cir.1996); *Union Pacific Railroad Company v. Burton*, 949 F.Supp. 1546 (D.Wyo.1996). However, that immunity extends only to the state and governmental entities that are "arms of the state," *Watson*, 75 F.3d at 574. This "arm-of the state" doctrine means that entities created by state governments that operate as alter egos or instrumentalities of the states have immunity. *Id.*

To make the determination whether an entity is an arm of the state we engage in two general inquiries. "[T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Haldeman v. State of Wyo. Farm Loan Board*, 32 F.3d 469, 473 (10th Cir. 1994). "The government entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury." *Haldeman*, 32 F.3d at 473.

*Id.* at 578–79.

■■■ This court finds and concludes that the Board is an entity or an arm of the state of Wyoming. Accordingly it is entitled to Eleventh Amendment immunity from suit in federal court unless Congress has abrogated that immunity. Accord *McFarland v. Folsom*, 854 F.Supp. 862, 872 (M.D.Ala.1994) (Alabama State Board of Bar Examiners had Eleventh Amendment immunity from suit in federal court); *Kaimowitz v. The Florida Bar*, 996 F.2d 1151, 1155 (11th Cir.1993); *Bishop v. State Bar of Texas*, 791 F.2d 435, 438 (5th Cir.1986) (Eleventh Amendment immunity applied to State Bar of Texas because it is a state agency).

■■■ "In enacting section 1983, Congress did not intend to abrogate Eleventh Amendment immunity and grant jurisdiction to seek damages against a state." Similarly, the Eleventh Amendment prohibits actions under 42 U.S.C. § 1981 against arms of the state such as a state bar association. *Kaimowitz*, 996 F.2d at 1155. Thus, defendant has immunity from suit in federal court for plaintiff's count 6 and it must be dismissed.

Because this court is ruling on Eleventh Amendment immunity, as a matter of law, any issue of fact regarding the Board's knowledge or lack of knowledge of plaintiff's race is not relevant to the disposition of this claim.

*Counts 7 & 8—Direct Action Under Constitutional Clauses*

■■■ Counts 7 and 8 purport to bring claims for damages directly under the provisions of the United States Constitution. Defendant moves for judgment on these counts on the ground that direct action for damages under the cited provisions is not available.

Congress enacted 42 U.S.C. § 1983 to vindicate rights guaranteed under the Fourteenth Amendment. *Housing Authority of the Kaw Tribe of Indians of Oklahoma v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir.1991). By enacting § 1983, "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the constitution and viewed as equally effective ..." *Bauchman, by and through Bauchman v. West High*, 900 F.Supp. 254, 263 (D.Utah 1995). Thus, Claim No. 7 must be dismissed because a direct action under the Constitution is not appropriate where § 1983 exists to provide a remedy for alleged violations of a plaintiff's rights under the Fourteenth Amendment.

Similarly, § 1983 is available to provide a remedy for alleged violations of Ms. Ware's rights under Article IV, § 2. *C.f. Dennis v. Higgins*, 498 U.S. 439, 441–47, 111 S.Ct. 865, 868–70, 112 L.Ed.2d 969 (1991) (language of § 1983 is to be broadly construed to encompass violations of constitutional rights in ad-

dition to those protections of the Fourteenth Amendment).

It is important to note that by her count 8, Ms. Ware is not seeking to challenge the constitutionality of the Rule, but is instead seeking damages for the alleged violation of her rights caused by the application to her of the Rule. It is clear that a direct action is available to challenge the constitutionality of a Wyoming Supreme Court Rule on the grounds that it violates the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution. *See Barnard v. Thorstenn,* 489 U.S. 546, 550, 109 S.Ct. 1294, 1298, 103 L.Ed.2d 559 (1989) (invalidating residency requirement for membership in Virgin Island's bar unconstitutional under Privileges and Immunities Clause of Article IV of the U.S. Constitution) and *Sommermeyer v. Supreme Court of the State of Wyoming,* 871 F.2d 111 (10th Cir.1989) (applying *Friedman* and invalidating former Wyoming Supreme Court Rule 5(c) which required residency in order to become a member of the Wyoming State Bar Association by motion instead of by taking the bar exam). However, such a challenge to the constitutionality of a rule is very different from an action for violation of a constitutional right, which should be brought under 42 U.S.C. § 1983.[4]

Accordingly, defendant is entitled to judgment on count 8 because there is no direct action for violation of the Privileges and Immunities Clause of Article IV.

*Tort Action—Count 4*

■ As noted above, the Eleventh Amendment bars state law claims against the Board in federal court absent express waiver of Eleventh Amendment immunity. *Mascheroni v. Board of Regents of Univ. Of Cal.,* 28 F.3d 1554, 1557 (10th Cir.1994). Thus defendant is entitled to immunity on plaintiff's count 4.

Defendant further contends that Wyoming has not waived its immunity for suits for tort liability for intentional infliction of emotional distress,[5] and that plaintiff has failed to comply with the Wyoming Governmental Claims Act by filing a claim prior to filing this

action. These contentions are correct and it is true that the failure to file a claim pursuant to Wyo. Stat. § 1–39–113 prior to filing suit bars the suit. *Peterson v. Sweetwater County School District No. 1,* 929 P.2d 525, 529 (Wyo.1996).

■ However, even if plaintiff had complied with the Wyoming Governmental Claims Act and Wyoming had waived its sovereign immunity for her tort claim, the States' waiver of its sovereign immunity for claims brought under Wyo. Stat. § 1–39–113 does not amount to a waiver of its Eleventh Amendment immunity. *Ballou v. University of Kansas Medical Center,* 871 F.Supp. 1384, 1390 (D.Kan.1994).

Accordingly, the court will dismiss plaintiff's tort claim on the basis of Eleventh Amendment immunity.

*ADA—Counts 1, 2 and 3*

Unlike 42 U.S.C. §§ 1981 and 1983, Congress did expressly abrogate a state's Eleventh Amendment immunity for claims made under the ADA. 42 U.S.C. § 12202. Thus, the court turns to plaintiff's claims under the ADA.

Congress enacted the ADA to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101; *Lincoln CERCPAC v. Health and Hospitals Corporation,* 920 F.Supp. 488, 496 (S.D.N.Y.1996).

■ Title II of the ADA prohibits discrimination by public entities. "Public entity" is defined as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or State or local government." 42 U.S.C. § 12131(1). Defendant Board falls within the definition of "public entity" set forth in section 12131. *Ellen S. v. Florida Board of Bar Examiners,* 859 F.Supp. 1489, 1493 n: 4 (S.D.Fla.1994).

Section 12132 of the ADA provides "no qualified individual with a disability shall, by

---

**4.** Further, it appears that a plaintiff would need to be a nonresident to bring such a challenge to the constitutionality of a rule on the basis that it violates the Privileges and Immunities Clause of

the United States Constitution because it imposes a residency requirement.

**5.** Wyo. Stat. §§ 1–39–105 through 1–39–112.

reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The implementing regulation prohibits a public entity such as the Board from administering "a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(6). Subsection (b)(8) of the same section prohibits the Board from imposing or applying "eligibility criteria that screen out an individual with a disability ... from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."

Section 12189 of the ADA provides:

Any person that offers examinations or courses shall offer such examinations or courses in place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189.

■■■ The term "person" in § 12189 includes governmental agencies and entities such as the Board. *D'Amico v. New York State Board of Law Examiners*, 813 F.Supp. 217, 221 (W.D.N.Y.1993) (noting that "person" is defined as having same meaning as in Civil Rights Act where it is defined as including governments and governmental agencies).

The implementing regulation is found at 28 C.F.R. § 36.309 which provides that the examination is to be administered so as best to ensure that it reflects an individual's aptitude or achievement level rather than the individual's impaired skills. The regulation also provides that required modifications may include changes in the length of time permitted for completion of the exam, auxiliary aids and services, and alternative accessible arrangements such as providing an examination at a person's home. *Id.*

It is undisputed that plaintiff is a disabled individual within the meaning of the ADA. She contends that defendant has violated sections 12132 and 12189 of the ADA and the implementing regulations.

### 1. *Count 1–Facial Challenge to 1992 Version of Rule 212*

Defendant moves for summary judgment on plaintiff's count 1, concerning the 1992 version of Rule 212, on the grounds that it is moot, is not justiciable, and that plaintiff lacks standing to challenge the rule.

■■■ The court agrees that plaintiff's challenge to the facial validity of the 1992 version of Rule 212 is moot. It is undisputed that neither of the challenged provisions of the 1992 version were applied to plaintiff because she was informed ahead of time that she would not be charged for accommodation and she never made a request for emergency accommodation.

■■■ Further, to the extent that plaintiff's claim regarding the 1992 version of the rule is not moot, the court must reject her theory that the ADA completely preempts the state bar rules and therefore any state bar rule relating to reasonable accommodation for a disability violates the ADA because its very existence burdens disabled persons. The ADA does not completely preempt or displace a state's procedure for licensing attorneys, rather "the ADA merely prohibits states from discriminating on the basis of disability." *Ellen S.*, 859 F.Supp. at 1493.

■■■ In her Counter–Motion for Summary Judgment, plaintiff raises the Board's application of former Rule 212 against another applicant. Plaintiff does not have standing to challenge the Board's past application of the 1992 version of Rule 212 against another disabled applicant. Thus, plaintiff's count 1 must be dismissed as moot.

### 2. *Count 2—Facial Challenge to 1996 Version of Rule 212*

Defendant moves for summary judgment on plaintiff's facial challenge to the 1996 version of Rule 212 on the grounds of lack of standing and also contends that the 1996 version does not violate the ADA. Defendant contends that plaintiff lacks standing to challenge the 1996 version because it was never applied to her.

Article II of the United States Constitution requires that those who seek to invoke

**1354**

the power of the federal courts must allege an actual case or controversy. Accordingly, the court must determine whether plaintiff has standing to seek declaratory relief under the ADA.

> The case law has established three constitutional requirements for standing: (1) the plaintiff must have suffered "an injury in fact," (2) "there must be a causal connection between the injury and the conduct complained of," (3) it must be " 'likely' ... that the injury will be 'redressed by a favorable decision.' "

*Atakpa v. Perimeter OB–GYN Associates,* 912 F.Supp. 1566, 1573 (N.D.Ga.1994) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992)).

▮▮▮▮ It is undisputed that plaintiff has paid her application fee to take the Wyoming Bar exam. For this fee she is entitled to try to pass the bar two times. It is the 1996 version that will apply to her. Thus she has standing to challenge the facial validity of the 1996 version insofar as it applies to her. However, two of plaintiff's three challenges to the facial validity of the 1996 version involve provisions for which there is no controversy in plaintiff's case. The defendant has never disputed that plaintiff is disabled within the meaning of the ADA or the meaning of either version of Rule 212. Thus, because there is no dispute that plaintiff is disabled within the meaning of the 1996 version of Rule 212, there is no alleged injury from the existence of the definition and therefore plaintiff lacks standing to challenge that definition.

▮▮▮▮ Further, even if plaintiff had standing to challenge the definition of disabled, the court concludes that the definition does not violate the ADA. There was no definition of the term "disability" in the 1992 version, which was actually applied to plaintiff. The 1996 version provides:

> (b) For the purpose of this rule, the following definitions shall apply:
>
> (1) "Disability" shall mean any of the following:
>
> A physical or mental impairment that substantially limits the ability of the applicant to demonstrate, under standard testing conditions, that the applicant possess the essential skills and aptitude that the Supreme Court of Wyoming and the Board of Law Examiners have determined are appropriate to require for admission to the practice of law in Wyoming.

(Underlined emphasis added).

This definition differs from the ADA's definition of disability in that the underlined portion has been added and the ADA's phrase regarding persons with a history of an impairment has not been included. Compare 42 U.S.C. § 12102(2)(B) (disability includes a "record of such an impairment").

According to the drafter of the 1996 version of Rule 212, inclusion of persons with a record of impairment was unnecessary because "accommodations would not be necessary for someone who did not currently suffer from an impairment." Studer[6] aff'd. ¶ 9(a). This court agrees. Further, plaintiff does not show how this provision could affect her. She has never alleged that she has a history of a disability, instead she has always alleged, and the Board agrees, that she is in fact disabled.

Plaintiff also challenges the definition of "disability" because it includes the underlined portion above and she believes that it impermissibly narrows the definition. However, she does not explain how this could possibly detrimentally affect her in the future.

Subsection (b) (1) of the 1996 version of Rule 212 does not purport to define disability for all purposes. Instead, it defines disability only for the limited purpose of defining those who seek examination accommodation based upon a disability. The court agrees with the defendant that "it is implicit in a request for special accommodations that the applicant is representing and must establish that the standard testing conditions are inadequate or prohibitive." Studer ¶ 9(a). There would be no point for a person who is disabled under the ADA definition to apply for examination accommodation if he or she was able to demonstrate his or her essential skills and aptitudes for admission to the Bar under

---

6. Judith A. Studer is the Board's Chairperson and the drafter of the 1996 version of Rule 212.

the standard testing conditions developed by the Board.

■ Plaintiff next challenges the 1996 version of Rule 212 relating to medical examinations. The subsection of the rule dealing with examinations also deals with the release of education, medical and psychological information and the court will address these areas together.

Subsection (c) (3) of the 1996 version of Rule 212 provides:

> (3) Upon request, the applicant shall submit an authorization for release of records from educational institutions, medical, psychological and/or appropriate authorities who completed certificates submitted with the request, if the Board determines that access to those records is reasonably necessary to determine whether an applicant's condition meets the criteria for a disability set forth in this policy. The board may, at its expense, require an examination by an appropriate authority.

Rule 212(c)(3) (underlined emphasis added).

Plaintiff's arguments regarding her ADA claims are not very clear. In part this results from "consolidating" her arguments regarding counts 1, 2 and 3 in her brief. See plaintiff's Counter Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment, pp. 22–37. However, it appears that plaintiff is contending that subsection (c)(3) screens out disabled applicants and unduly burdens disabled applicants.

The comments to the implementing regulations specifically provide for this type of inquiry.

> Examiners may require evidence that an applicant is entitled to modifications or aids as required by this section, but requests for documentation must be reasonable and must be limited to the need for the modification or aid requested. Appropriate documentation might include a letter from a physician or other professional, or evidence of a prior diagnosis, or accommodation, such as eligibility for special education.

Comment 28 C.F.R. § 36,309.

Subsection (c)(3) requests only information that is reasonable and that is directly related to the need for the modification or aid requested. To begin with, disclosure of records and/or physical examination are not mandatory. Instead, they may be sought only "upon request" by the Board. Further, the category of records for which an applicant may be requested to provide release is strictly limited to those authorities "who completed certificates submitted" with the applicant's request for accommodations. This strict limitation to those educational institutions or health care providers that the applicant has chosen to ask to certify his or her request for accommodation alleviates concerns regarding privacy of non-relevant educational, medical or psychological records. Further, because the Board's inquiry is strictly limited to records "reasonably necessary to determine whether an applicant's condition meets the criteria for a disability" as defined in subsection (b)(1), the records are limited to those necessary only to show whether the applicant's condition substantially limits his or her ability to show he or she is qualified for admission to the practice of law under standard test conditions.

The provisions of subsection (c)(3) do not screen out[7] the disabled or unduly burden the disabled. Instead, they allow the Board limited access to information necessary to the decision it needs to make—whether the requested accommodation is reasonable.

Accordingly, defendant is entitled to judgment on count 1.

### 3. Count 3—Alleged Violation of ADA.

In her count 3, plaintiff contends that the Board violated the ADA by its treatment of her during the application process. Once again, her contentions are not entirely clear, however, it appears that she is contending that the Board discriminated against her on the basis of her disability by (1) denying her request for time and a half to complete the

---

7. For an example of regulations which the court found screened out and burdened the disabled in violation of the ADA see *Ellen S.*, 859 F.Supp. 1489.

exam which she contends screens out disabled applicants; (2) denying her request to take the test in Cheyenne; (3) by retaliating against her for filing a complaint (4) by retaliating against her for refusing to practice on an actual bar exam question; (5) by asking her doctor to detail or comment on the exact accommodations that she needed; and (6) by setting a time limit for emergency accommodations.

Defendant moves for summary judgment on plaintiff's count 1 and contends (1) that plaintiff's claim for fines and penalties is not available because it is a public entity; (2) plaintiff's claims for declaratory and injunctive relief are barred by the *Rooker–Feldman* Doctrine; and, (3) that the undisputed facts show that it did not violate the ADA.

 The court agrees that defendant is entitled to judgment on plaintiff's claim for fines and penalties under 42 U.S.C. §§ 12182 and 12188 because § 12182 applies only to private entities and, as noted above, defendant is a "public entity" as defined in 42 U.S.C. § 12131(1).

 Defendant contends that the *Rooker–Feldman*[8] Doctrine bars direct review of a state appellate court's final judgment in a bar admission matter by this federal district court.

The court finds and concludes that the *Rooker–Feldman* Doctrine does not bar plaintiff's claim for violation of the ADA in connection with her application. Defendant relies upon the case *Johnson v. State of Kansas*, 888 F.Supp. 1073 (D.Kan.1995) and other cases where the challenged decision was a state appellate court decision to deny admission to a state bar. It is true that in *Johnson* the challenge to the denial of admission to the bar was made by alleging that the decision was based upon the existence of his disability—a mental condition described as,

among other things, bipolar disorder. 888 F.Supp. at 1077–78. However, in *Johnson* there was a decision by a state's appellate court denying plaintiff's admission to that state's bar and therefore the *Rooker–Feldman* doctrine applied. *Id.* at 1080. The present case is distinguishable because plaintiff is not challenging a final adjudication on the merits by the Board or by a state appellate court denying plaintiff admission to practice. The *Rooker–Feldman* doctrine would be applicable in this case only to the Wyoming Supreme Court's decision to deny plaintiff's request for a waiver of the two Wyoming lawyer certification rule.[9]

Thus, the court having determined that plaintiff's claim for violation of the ADA is not barred by the *Rooker–Feldman* doctrine, the court will turn to the merits of plaintiff's claim that the Board violated the ADA by its treatment of her.

 In order to show a violation of the ADA in connection with testing the plaintiff must show (1) that she is disabled (2) that her requests for accommodations are reasonable and (3) that those requests are denied. *D'Amico*, 813 F.Supp. at 221.

The ADA requires the Board to make "reasonable accommodations" under the circumstances in light of plaintiff's disability. An individual analysis must be made with every request for accommodations and the determination of reasonableness must be made on a case by case basis. *Id.*

In this case it is undisputed that plaintiff is disabled and that her requests for a change of venue for the test and for time and one-half to take the test were denied.

Considering the undisputed evidence in this case, the court finds there are no material issues of fact and concludes that defendant

---

**8.** The doctrine takes its name from the cases *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) (Congress, in enacting the statute now codified at 28 U.S.C. § 1257, foreclosed federal courts other than Supreme Court, from reviewing final judgments of state courts) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983) (extending *Rooker* to hold federal district courts lack appellate jurisdiction to review state court

decision in a bar admission matter reached in judicial proceedings). This doctrine does not apply to a facial challenge to a bar admission rule. *Doe v. Pringle*, 550 F.2d 596 (10th Cir. 1976), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977).

**9.** Although review of that decision was probably barred by the *Rooker–Feldman* Doctrine, the court did not reach that argument because it disposed of plaintiff's count 7 on other grounds.

is entitled to judgment as a matter of law on plaintiff's claim of violation of the ADA.

■ Plaintiff contends that time and one-half was necessary accommodation because it was the accommodation she had previously received during her legal education and when she took the Utah Bar exam. She also contends that time and one-half is reasonable accommodation pursuant to the Testing Accommodations Guide (Pl's Ex. 39). Finally, she contends that a timed test is discriminatory because it screens out disabled individuals. In this case the Board has presented undisputed evidence that it followed plaintiff's doctor's recommendations exactly with regard to timing. Plaintiff did not supply medical documentation for her request for time and one-half. Although information regarding past accommodations may be helpful to the Board, the fact that a person has been granted a particular accommodation in the past does not mean that such accommodations are presumably reasonable. Each testing agency has an independent duty under the ADA to determine reasonableness on a case-by-case basis.

As noted in the Testing Guide relied upon by plaintiff.

> The emphasis should not be on consistency of accommodation, but rather on meeting documented need for individual accommodation.

> \* \* \* \* \* \*

> [Extended time] is probably the most common accommodation. It is used to accommodate a variety of disability-related conditions.... Any time an auxiliary aid such as a scribe or adaptive equipment is used, extended time should be provided.

> The real question is how much extra time is appropriate. For most test-takers, the standard extension is time-and-a-half. However, this should not be regarded as a firm ceiling; decisions should be reviewed on a case-by-case basis, keeping in mind the type of accommodations being provided, the disability involved, and the type of test being administered ... It is the responsibility of the professional who completes the supporting documentation to

provide the time frame that should be utilized.

*Id.* at 10–12 (underlined emphasis added).

In this case the professional utilized was Dr. Johnson. He specified the extra time necessary and the Board followed the professional's recommendation. Dr. Burns's recommendation is simply too indefinite to provide guidance to the Board.

The court rejects plaintiff's contention that the existence of a timed test screens out disabled applicants as unsupported by the record on summary judgment.

■ There is no evidence that plaintiff's request to take the exam in Cheyenne was reasonable within the meaning of the ADA. The request was untimely, it was unsupported by any documentation showing it was needed, and it was not made pursuant to the Board's powers to grant such requests on an emergency basis.

There is no evidence in this case that the Board retaliated against plaintiff for filing a complaint or for declining to practice on an actual bar exam question.

■ The court cannot find that the Board's action in requesting specific information from the applicant's treating physician regarding accommodation violated the ADA. Plaintiff's position is that her treating physician merely had to certify she had the disability in order for her request to be granted. Plaintiff's Motion, p. 25. This is not the law. The law demands that the Board tailor accommodation to each disabled applicant's specific needs. The Board cannot fulfill this requirement if it is prohibited from explaining the standard testing procedure to the professional who then must make a recommendation regarding how that procedure must be changed to accommodate a specific individual's disability. The importance of such communication is exemplified by the Board's change of position with regard to restroom breaks. After receipt of plaintiff's doctor's written recommendations, the Board changed its previously announced accommodations to allow plaintiff complete flexibility in how she chose to use her allotted restroom break time.

Finally, the court can find no violation of the ADA from the time-limit set for emergency requests for changes in accommodation because plaintiff did not make an emergency request for accommodation.

In plaintiff's pleadings it appears that she also has a concern about Mr. Lewis's presence in the exam room for the purpose of transferring answers from the test booklet and the Board's proposal that her dictation be videotaped. There is nothing in the record to contradict the position that the Board suggested these precautions as a method of protecting plaintiff's right to accurate transcriptions. However, plaintiff did not appeal these conditions and they do not appear to be unreasonable.

Finally, the court notes that more than anything else this case appears to be the result of lack of communication between plaintiff and her health care providers. Despite extensive efforts by the Board, plaintiff believes she cannot receive necessary accommodation to take the bar exam. Although plaintiff imputes improper motives to the Board, it appears that the Board believed it could not grant all of her requested accommodations because they were not supported by specific recommendations or certifications by her health care providers. It is hoped that future timely communication between plaintiff and her health care providers will inform them of the exact accommodations she believes she needs, the reason she needs the accommodations, and the necessity of submitting those recommendations to the Board in specific and detailed form instead of such generalized ideas as "some accommodation."

## CONCLUSION

The material facts in this case are undisputed. Plaintiff makes allegations regarding the Board's improper motives in general and Mr. Lewis's actions in particular. However, unsupported and conclusory allegations are insufficient to oppose the defendant's Motion for Summary Judgment which sets forth facts in the form of sworn affidavits and attached exhibits. *See Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Atakpa,* 912 F.Supp. at 1572 (quoting *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10). Because her allegations are largely unsupported as required by Fed.R.Civ.P. 56, plaintiff has failed in her burden of showing material issues of fact in either opposition to defendant's Motion for Summary Judgment, *Id.,* or in support of her own Counter Motion for Summary judgment. Further, the disposition of many aspects of this case, such as defendant's claim of Eleventh Amendment immunity, the availability of direct actions under the U.S. Constitution for violations of rights granted under clauses of that Constitution, standing to bring facial challenges to either version of Rule 212, and whether the 1996 version is facially violative of the ADA, were all decided as a matter of a law.

Accordingly, the court having found there are no material issues of fact and that defendant is entitled to judgment as a matter of law, it is therefore

ORDERED that plaintiff's Counter–Motion for Summary Judgment is DENIED. It is further

ORDERED that defendant Wyoming Board of Law Examiners' Motion for Summary Judgment is GRANTED.

The court will enter judgment is favor of defendant.