Jonathan N. PAZER, Plaintiff,

v.

NEW YORK STATE BOARD OF LAW EXAMINERS, et al., Defendants.

No. 94 Civ. 0904 (JES).

United States District Court, S.D. New York.

April 26, 1994.

Arthur R. Block, New York City, for plaintiff.

G. Oliver Koppell, Atty. Gen. of the State of N.Y., Judith T. Kramer, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff, Jonathan N. Pazer, commenced this action pursuant to the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, *et seq.*, against the New York State Board of Law Examiners (the "Board"). Plaintiff seeks a preliminary injunction to compel the Board to provide him with certain requested accommodations when he sits for the New York State Bar Examination on February 22 and 23, 1994 (February exam"). For the reasons that follow, plaintiff's motion shall be and hereby is denied.

## BACKGROUND

Plaintiff Jonathan Pazer ("Pazer") graduated from Albany Law School in May 1993 and is employed full-time in a law office in Manhattan. Complaint ¶ 5. In anticipation of taking the New York State Bar Examination on July 27 and 28, 1993 ("July 1993 bar exam"), on or about May 18, 1993, plaintiff petitioned the Board pursuant to 20 N.Y.C.R.R. § 6000.4 to request certain accommodations for the visual processing disability from which he claims to suffer. Declaration of Jonathan N. Pazer dated February 14, 1994 ("Pazer Decl."), Ex. K.

On or about June 15, 1993, by letter from defendant-James T. Fuller ("Fuller"), the Executive Secretary of the Board, the Board requested that plaintiff "submit scores from recent administrations of the ... Woodcock Reading Master Test, forms G and H...." Complaint ¶ 35. Plaintiff provided the requested information to the Board on or about Friday, July 23, 1993. *See* Transcript from Hearing held February 17 and 18, 1994 ("Hearing Tr."). On or about Monday, July 26, 1993, plaintiff received a letter dated July 23, 1993, from defendant-Fuller, informing plaintiff that the Board had been assisted by "expert in the field, Dr. Frank R. Vellutino, a licensed psychologist" and that his request for accommodations was denied because "the Board has concluded that the evidence presented does not support the position of a learning disability." *See* Complaint ¶ 38–39; Pazer Decl. Ex. M.

Plaintiff took the July 1993 exam without accommodations and obtained a score of 625 against a passing score of 660. Complaint ¶ 40. Plaintiff alleges that in taking the exam he experienced the various difficulties he had anticipated in his petition for accommodation. Complaint ¶ 40. Shortly after Pazer's July 1993 bar examination scores came out in November 1993, plaintiff retained counsel. *See* Hearing Tr. (Pazer testimony) 35.

On or about December 24, 1993, plaintiff applied for admission to the February 1994 exam and again requested certain accommodations for his disability, which he supported with the same evidence originally submitted in July 1993 (the "second accommodation request"). Complaint ¶ 41. By letter dated January 25, 1994, defendant-Fuller informed plaintiff that his second accommodation request was denied. Complaint ¶ 42.

On or about February 3, 1994, plaintiff instituted an administrative appeal of the Board's decision by sending the Board a demand letter. Declaration of Arthur R. Block, Esq. dated February 15, 1994 ("Block Decl."), Ex. A. On or about February 14, 1994, plaintiff's counsel received notice that the Board had denied the administrative appeal. Block Decl., Ex. B.

On or about February 15, 1994, plaintiff commenced this action pursuant to Titles II

286

and III of the ADA to compel the Board to provide him with "reasonable accommodations" to take the February 1994 bar exam over a period of four (4) days rather than two (2), with use of a computer with word processing, spell checking, and abbreviation expanding software, permission to record his answers to the multiple choice portion of the exam in the test book, and a location designed to minimize distractions. *See* Order to Show Cause dated February 15, 1994.

## DISCUSSION

■■■ The standards for obtaining a preliminary injunction are well established in this Circuit. The moving party must show irreparable injury and "either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balancing of hardships in its favor." *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) (quoting *Coca-Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 314–15 (2d Cir.1982)). Where, as here, the granting of the preliminary injunction will give the movant essentially all the relief he seeks, a somewhat higher standard is applied, *i.e.,* "the movant must show a *substantial* likelihood of success on the merits, rather than merely a likelihood of success," *Johnson v. Kay,* 860 F.2d 529, 540 (2d Cir.1988), and a strong showing of irreparable harm. *Doe v. New York University,* 666 F.2d 761, 773 (2d Cir.1981). In this case, plaintiff has failed to satisfy either standard.

The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101 (Supp. IV 1992). A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. § 12102(2)(A) (Supp. IV 1992). Therefore, a covered entity discriminates against a disabled individual when it fails to make "reasonable accommodations to ... known physical or mental limitations...." 42 U.S.C. § 12112(b)(5)(A) (Supp. IV 1992). Section 12132 states in pertinent part:

"[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity ..."

42 U.S.C. § 12132 (Supp. IV 1992). Section 12189 states in pertinent part:

"Any person that offers examinations ... related to applications, licensing, certification, or credentialing for ... professional ... purposes shall offer such examinations ... in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

42 U.S.C. § 12189 (Supp. IV 1992).

The term "person" is defined as having the same meaning given the term in § 701 of the Civil Rights Act of 1964, 42 U.S.C. 12111(7) (Supp. IV 1992), which defines "person" to include governments and governmental agencies. 42 U.S.C. § 2000e(a)(1988).

■■■ In addition, in 1992, the Department of Justice promulgated regulations on "Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities," 28 C.F.R. Part 36, which state in pertinent part:

"Any private entity offering an examination covered by this section must assure that—

(i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)"

28 C.F.R. § 36.309 (1992). Although the express of language of this regulation refers to "a private entity," since the statute quoted above defines "person" to include governments and government agencies, the regulation must be interpreted to apply to the

Board.[1] The Court therefore finds some merit to the argument that a disparity between inherent capacity and performance on a test may, in some circumstances, permit the inference that an individual has a learning disability, even though that individual's performance has met the standard of the ordinary person.

The Court is not persuaded, however, that such a disparity compels that conclusion as a matter of law, especially since that disparity could reasonably be the result of many other factors, such as, stress, nervousness, cautiousness and lack of motivation. *See* Hearing Tr. (Vellutino testimony) 144, 154, 163. Indeed, to hold otherwise would compel the conclusion that any underachiever would by definition be learning disabled as a matter of law, as Dr. Vellutino opined. *See* Hearing Tr. (Vellutino testimony) 154, 163.

■ In this case, the evidence is not sufficient to support a conclusion of learning disability. Dr. Vellutino, an acknowledged expert on dyslexia, upon whose opinion the Board was clearly entitled to rely, *see School Board of Nassau Co., Fla. v. Arline*, 480 U.S. 273, 288, 107 S.Ct. 1123, 1130, 94 L.Ed.2d 307 (1987); *see also Doe v. Region 13 Mental Health–Mental Retardation Commission*, 704 F.2d 1402, 1410–12 (5th Cir.1983), testified that plaintiff did not have a learning disability. The Court finds that testimony both credible and persuasive and well within the mainstream of scientific analysis in his field.

Dr. Vellutino's conclusion that Pazer's performance levels on the tests at issue was not consistent with a learning disability is well-founded. Hearing Tr. (Vellutino testimony) 153; *see also* Affidavit of Frank R. Vellutino, Ph.D., dated February 1994 ("Vellutino Aff.") ¶¶ 28–34. For instance, Pazer performed at the 62nd percentile level, which is well within the average adult range, on the timed Woodcock–Johnson–Spatial Relations test. Vellutino Aff. ¶ 33. Pazer also performed very well on the timed reading comprehension test, *i.e.*, at the 64th percentile, which is also in the average to superior range for adults, Hearing Tr. (Vellutino testimony) 172, a score not materially different from the 84th percentile he scored on an untimed basis on the passage comprehension test relied upon by his own expert. *See* Pl.Ex. 11.

Moreover, although Pazer did not receive special examination accommodations in high school or through the first two years of college, there is not a marked disparity between his grades in the first two years of college, when he maintained a GPA of approximately 2.9, and the remaining years of college, when he received accommodations and reached a GPA of about 3.1. *See* Pl.Ex. 10.

Furthermore, Pazer's performance on these tests tended to refute Dr. Smith's conclusion that he suffered from dysgraphia. Hearing Tr. (Vellutino testimony) 169. The Court accepts Dr. Vellutino's opinion that if Pazer had an eye-motor coordination problem, *i.e.*, dysgraphia, it would have revealed itself in other tests administered here, and it did not. Hearing Tr. (Vellutino testimony) 169. This is especially true since Pazer never submitted any figure drawing tests, which are the tests best designed to determine if dysgraphia exists.

■ In any event, Pazer has made no showing of irreparable injury sufficient to entitle him to mandatory injunctive relief. The law in this Circuit requires a strong showing of irreparable injury where mandatory injunctive relief is sought, *Doe v. New York University, supra*, 666 F.2d at 773, and a sufficient showing of irreparable injury in any case. *Reuters, supra*, 903 F.2d at 907. Indeed, any so-called irreparable injury here is largely the result of Pazer's decision not to seek judicial relief sooner.

Since Pazer had no reason to believe that accommodations would be granted the second time when they had been denied the first

---

1. There has been no argument made that this regulation is inconsistent with or in any other way not authorized by the statute. It is significant that there is in the regulation itself a BFOQ-type exception that makes the regulation inapplicable "where those skills are the factors that the examination purports to measure." 28 C.F.R. § 36.309 (1992). It is, therefore, at least arguable that reading is a skill necessary to be a lawyer and that it is reasonable to expect that a bar applicant, whether learning disabled or not, have the reading capacity of the ordinary person, which according to the expert testimony is at the 5th or 6th grade level. Vellutino Tr. 143.

time, on exactly the same evidence which he resubmitted for the February 1994 bar examination, he could and should have sought judicial intervention even before the February bar examination was announced. Complaint ¶ 41. Moreover, Pazer admitted on cross-examination that he retained an attorney to represent him on this issue "shortly after [his July 1993 bar examination] scores came out" in November 1993. Hearing Tr. (Pazer testimony) 35. Moreover, despite the fact that the State Bar Examiners notified Pazer in their July 23, 1993 letter to him that their denial of accommodations in the July 1993 bar examination was based on the expert opinion of Dr. Vellutino, Pazer did not request a copy of Dr. Vellutino's report prior to January 1994. Hearing Tr. (Pazer testimony) 43–44.

Finally, at the time that plaintiff sought relief, he was already gainfully employed as a first-year associate at a Manhattan law firm. *See* Complaint ¶ 5. Under similar circumstances, where a plaintiff who sought a mandatory injunction to begin medical school was gainfully employed and could have sought judicial relief earlier, the Second Circuit held that it would reverse a grant of preliminary relief "solely on the ground that [the plaintiff] failed to make a sufficient showing of irreparable injury." *Doe v. New York University, supra,* 666 F.2d at 773–774. Pazer has made no showing that his case is any more compelling. Accordingly, the motion for a preliminary injunction must be denied.

### CONCLUSION

For the reasons stated above, plaintiff's motion for a preliminary injunction shall be and hereby is denied.

It is **SO ORDERED.**