OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS


May 17, 1999

Mr. John R. Speed, P.E.
Executive Director
Texas Board of Professional Engineers
P.O. Box 18329
Austin, Texas 78760-8329

Opinion No. JC-0050

Re: Whether the federal Americans with Disabilities Act precludes the Texas Board of Professional Engineers from requiring an examinee, who seeks modifications to an examination, to submit proof of disability, and related questions (RQ-1179)

Dear Mr. Speed:

You ask about the effect of the federal Americans with Disabilities Act, 42 U.S.C.A. §§ 12101-12213 (West 1995 & Supp. 1998) (the "ADA"), on examinations administered by the Texas Board of Professional Engineers (the "Board"). You explain that the Board administers national engineering examinations twice a year at about twenty locations throughout the state. Examinees claiming "to have physical disabilities, learning disabilities or other disabling conditions" have asked for special accommodations, including "scribes, readers, extra time for learning disabilities, interpreters, special chairs or work areas, and general building accessibility." Letter from John R. Speed, P.E., Executive Director, Texas Board of Professional Engineers, to Honorable Dan Morales, Texas Attorney General (Aug. 10, 1998) (on file with Opinion Committee) [hereinafter Speed letter of 8/10/98]. You ask a number of questions about the Board's authority to to evaluate these requests and its duty to accommodate disabilities under the ADA. As your questions focus on the ADA rather than state law, we do not address whether state provisions regarding testing and disabilities apply to the Board. See, e.g., TEX. HUM. RES. CODE ANN. §§ 121.010, .011 (Vernon Supp. 1999). We note, however, that the ADA provides that it is not to "be construed to invalidate or limit the remedies, rights, and procedures of any . . . law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by [the ADA]." 42 U.S.C.A. § 12201(b) (West 1995).

Before turning to your specific questions, we begin with a brief discussion of the statutory and regulatory framework. Title I of the ADA prohibits employment discrimination on the basis of disability, see id. §§ 12111-12117; title II prohibits discrimination on the basis of disability by public entities, see id. §§ 12131-12165; and title III prohibits discrimination on the basis of disability in places of public accommodation, see id. §§ 12181-12189. The federal Equal Employment

Opportunity Commission has promulgated rules enforcing title I of the ADA, *see* 29 C.F.R. pt. 1630 (1998), and the United States Department of Justice ("Department of Justice") has promulgated rules implementing titles II and III, *see* 28 C.F.R. pts. 35 (implementing title II, subchapter A) & 36 (1998), and has published extensive commentary to those rules, *see* 28 C.F.R. pt. 35, App. A to pt. 35 (1988) (Section-by-Section Analysis) [hereinafter App. A], pt. 36, App. B. to pt. 36 (1998) (Section-by-Section Analysis and Response to Comments) [hereinafter App. B].

The Board, a state agency, is a "public entity"[1] subject to the ADA, particularly title II, and the regulations promulgated under title II, 28 C.F.R. pt. 35. Section 12132, the cornerstone of title II, states in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C.A. § 12132 (West 1995). A Department of Justice regulation implementing section 12132 specifically provides that a "public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(6) (1998).

In addition, section 12189, a title III provision, states in pertinent part: *"Any person that offers examinations . . . related to applications, licensing, certification, or credentialing for . . . professional . . . purposes shall offer such examinations . . . in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."* 42 U.S.C.A. § 12189 (West 1995) (emphasis added). Title III generally applies to private, not public, entities. *See Bloom v. Bexar County, Tex.*, 130 F.3d 722 (5th Cir. 1997) (title III does not apply to public entities, including state and local government). The ADA defines the term "person," however, to include governments and governmental agencies. 42 U.S.C.A. § 12111(7) (West 1995) ("person" defined as having same meaning given term in Civil Rights Act of 1964); *see also id.* § 2000e(a) (West 1994) (Civil Rights Act of 1964 definition of "person" includes governments and governmental agencies). For this reason, courts have concluded that section 12189 applies to public entities that administer examinations for licensing and credentialing purposes, such as state boards of law examiners. *See, e.g., Ware v. Wyoming Bd. of Law Exam'rs*, 973 F. Supp. 1339, 1353 (D. Wyo. 1997), *aff'd*, 161 F.3d 19, (10th Cir. 1998); *Bartlett v. New York State Bd. of Law Exam'rs*, 970 F. Supp. 1094, 1128-29 (S.D.N.Y. 1997), *aff'd in part*, 156 F.3d 321 (2d Cir. 1998), *petition for cert. filed*, 67 U.S.L.W. 3528 (U.S. Feb. 8, 1999) (No. 98-1285); *Argen v. New York State Bd. of Law Exam'rs*, 860 F. Supp. 84, 87 (W.D.N.Y. 1994); *Pazer v. New York State Bd. of Law Exam'rs*, 849 F. Supp. 284, 286-87 (S.D.N.Y. 1994); *D'Amico v. New York State Bd. of Law Exam'rs*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993); *Florida Bd. of Bar Exam'rs re S.G.*, 707 So.2d 323, 325 (Fla. 1998); *In re Petition of Rubenstein*, 637 A.2d 1131, 1136-37 (Del. 1994).

---

[1] *See* 42 U.S.C.A. § 12131(1) (West 1995) (defining "public entity").

The Department of Justice regulation implementing section 12189, 28 C.F.R. § 36.309, includes the following provisions regarding examinations:

(a) General. Any private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

(b) Examinations.

(1) Any private entity offering an examination covered by this section must assure that—

(i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure);

(ii) An examination that is designed for individuals with impaired sensory, manual, or speaking skills is offered at equally convenient locations, as often, and in as timely a manner as are other examinations; and

(iii) The examination is administered in facilities that are accessible to individuals with disabilities or alternative accessible arrangements are made.

(2) Required modifications to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given.

(3) A private entity offering an examination covered by this section shall provide appropriate auxiliary aids for persons with impaired sensory, manual, or speaking skills, unless that private entity can demonstrate that offering a particular auxiliary aid

would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden. Auxiliary aids and services required by this section may include taped examinations, interpreters or other effective methods of making orally delivered materials available to individuals with hearing impairments, Brailled or large print examinations and answer sheets or qualified readers for individuals with visual impairments or learning disabilities, transcribers for individuals with manual impairments, and other similar services and actions.

(4) Alternative accessible arrangements may include, for example, provision of an examination at an individual's home with a proctor if accessible facilities or equipment are unavailable. Alternative arrangements must provide comparable conditions to those provided for nondisabled individuals.

28 C.F.R. § 36.309(a), (b) (1998). Although its express language refers to "a private entity," courts have applied this regulation to public entities that administer examinations for licensing and credentialing purposes, such as state boards of law examiners, because section 12189, the ADA provision the regulation implements, applies to governments and government agencies.[2]

We now turn to your specific questions, beginning with those about the Board's authority to evaluate requests for accommodations. First, we consider whether the Board may require a prospective examinee to provide proof of a disability and, if so, what proof would be reasonable. The Department of Justice commentary to the title III examination rule, 28 C.F.R. § 36.309, provides as follows:

Examiners may require evidence that an applicant is entitled to modifications or aids as required by this section, but requests for documentation must be reasonable and must be limited to the need for the modification or aid requested. Appropriate documentation might include a letter from a physician or other professional, or evidence of a prior diagnosis or accommodation, such as eligibility for a special

---

[2]*See* cases cited *supra* page 2. Interestingly, the commentary to the federal regulations suggests that title II rather than title III governs public-entity examiners. *See* App. A, *supra*, at 446 (analysis of § 35.130). We defer to the judgment of the courts that have considered the matter and look to the title III examination regulation for guidance in answering your questions. Should the United States Court of Appeals for the Fifth Circuit conclude that the title III examination regulation does not apply to public-entity examiners, we believe that the duties of a public-entity examiner to accommodate examinees' disabilities under title II would be much the same, if not identical. *See* 28 C.F.R. § 35.130(b)(6) (1998).

> education program. The applicant may be required to bear the cost of providing for such documentation.

App. B, *supra*, at 624 (analysis of § 36.309). Clearly, the federal rules permit the Board to require an examinee to provide documentation supporting a request for special accommodations.

Furthermore, case law suggests that the Board may seek additional information in certain circumstances. Relying on the commentary quoted above, a court recently rejected a challenge to a state board of law examiners rule requiring applicants to authorize the release of medical and educational records pertinent to requests for accommodation: "The provisions of [the rule] . . . allow the Board limited access to information necessary to the decision it needs to make—whether the requested accommodation is reasonable." *Ware*, 973 F. Supp. at 1355.[3] The court also rejected the plaintiff's contention that her treating physician's certification alone established her right to accommodation and precluded the board from contacting her physician for additional information:

> This is not the law. The law demands that the Board tailor accommodation to each disabled applicant's specific needs. The Board cannot fulfill this requirement if it is prohibited from explaining the standard testing procedure to the professional who must make a recommendation regarding how that procedure must be changed to accommodate a specific individual's disability.

*Id.* at 1357. In sum, based on the foregoing, we believe that the Board may require initial documentation supporting an examinee's request for special accommodations and may seek additional supporting information if necessary. The documentation and information requested from examinees must be limited to the need for the modification or aid requested.

With respect to evaluating requests, you also ask whether the Board may "seek a second opinion regarding such claims and use such opinion to deny or allow access to special accommodations." Speed letter of 8/10/98. While the Board may agree to an accommodation based solely on information provided by the examinee, the ADA does not prohibit the Board from seeking a second opinion regarding a request. Judicial decisions in this area are instructive. Courts will not necessarily defer to the judgment of a board regarding the merits of a request for special accommodations. *See Bartlett*, 156 F.3d at 327 (trial court did not err in refusing to defer to board of law examiners' determination that examinee not disabled because "[t]he Board has no expertise in assessing learning disabilities"). The New York State Board of Law Examiners has employed an expert to evaluate requests for special accommodations based on learning disabilities. While the

---

[3]The *Ware* court described the board rule as follows: "[D]isclosure of records . . . [is] not mandatory. Instead, they may be sought only 'upon request' by the Board. Further, the category of records . . . is strictly limited to those authorities 'who completed certificates submitted' with the applicant's request for accommodations. . . . Further, . . . the Board's inquiry is strictly limited to records 'reasonably necessary to determine whether an applicant's condition meets the criteria for a disability.'" *Ware*, 973 F. Supp. at 1355.

validity of the expert's opinion has been at issue in several cases, courts have not questioned the authority of the board to seek a second opinion. *See, e.g., Bartlett*, 970 F. Supp. at 1102; *Argen*, 860 F. Supp. at 86; *Pazer*, 849 F. Supp. at 285. Indeed, state boards that have rejected requests for special accommodations in examinations without supporting expert opinion to counter the recommendations of plaintiffs' treating physicians have not fared well in subsequent legal challenges. *See, e.g., D'Amico*, 813 F. Supp. at 223; *In re Petition of Rubenstein*, 637 A.2d at 1138.[4] When faced with conflicting expert opinions offered by an examinee and the examiner regarding an examinee's alleged disability and requested accommodations, courts rely on the opinion of the expert with the most credible credentials and methods. *See, e.g., Bartlett*, 970 F. Supp. at 1113 (rejecting board of law examiners' experts' methodology for assessing extent of learning disability); *Price v. The Nat'l Bd. of Med. Exam'rs*, 966 F. Supp. 419, 422-24 (S.D.W.Va. 1997) (rejecting opinions of examinees' experts and relying on opinions of examiners' experts); *Argen*, 860 F. Supp. at 88 (relying on testimony of board of law examiners' experts based on superior academic credentials and expertise); *Pazer*, 849 F. Supp. at 287 (holding that board of law examiners entitled to rely on opinion of its expert that examinee did not have learning disability because expert's testimony both credible and persuasive).

As the case law demonstrates, your Board would be well advised to base any decision to deny a request on expert opinion.[5] While the Board's reliance on expert opinion to deny a request will not insulate the Board from suit or a finding of liability for denying the request, it would certainly strengthen the Board's position in litigation. Because a court will not necessarily defer to the Board's or its experts' judgment regarding the merits of a request for special accommodations, the Board, in selecting experts, might wish to consider the weight prospective experts' opinions would carry with a trier of fact. In sum, while the Board need not seek a second opinion to grant requests for accommodation, the Board is not precluded from seeking a second opinion and would be well advised to base any decision to deny a request on credible expert opinion.

You suggest that the Board is especially concerned about the validity of requests for special accommodations for learning disabilities. In this regard, we note that federal regulations and judicial decisions *recognize learning disabilities as disabilities that may require accommodation under the ADA. See* 28 C.F.R. §§ 35.104(1)(i)(B), 36.104(1)(ii) (1998); *In re Petition of Rubenstein*, 637 A.2d at 1137 ("A learning disability . . . is a condition which the ADA recognizes should

---

[4]We note, however, that a court will not necessarily defer to the opinion of the plaintiff's treating physician in this context. *See Bartlett*, 970 F. Supp. at 1119-20.

[5]The Board may rely on expert opinion in any number of ways. It might, for example, merely rely on its expert's review of information submitted by the examinee. In some cases, it may be appropriate for the Board to ask an examinee to undergo a second evaluation, such as additional testing, by its expert. The Board may not require an examinee to undergo a second evaluation unless the required evaluation is necessary, reasonable, and limited to the need for the modification or aid requested. App. B, *supra*, at 614-15 (analysis of § 36.309).

be accommodated."); *see also* authorities cited *supra* page 2.[6]  The Board must evaluate each disability claim on its own merits. *Ware*, 973 F. Supp. at 1356; *D'Amico*, 813 F. Supp. at 221 ("The ADA . . . requires the Board to make 'reasonable accommodations' under the circumstances in light of [each examinee's] disability. An individual analysis must be made . . . on a case by case basis."). Whether a particular individual has a learning disability that rises to the level of a disability for purposes of the ADA is a question of fact beyond the purview of an attorney general opinion. For the same reason, this office is unable to determine whether a particular request for an accommodation is reasonable. That determination rests with the Board and must be made on a case by case basis. *See id.*

Now we turn to your questions about the Board's duty to make accommodations under the ADA. First, you ask whether the Board has the "obligation to proactively ask *all* examinees if they need any special accommodations." Speed letter of 8/10/98 (emphasis in original). A title II regulation requires a public entity to

> make available to applicants, participants, . . . and other interested persons information regarding the provisions of this part and its applicability to the services, programs, or activities of the public entity, and make such information available to them in such manner as the head of the entity finds necessary to apprise such persons of the protections against discrimination assured them by the Act and this part.

28 C.F.R. § 35.106 (1998). This regulation suggests that the Board make available to prospective examinees information about their right under the ADA to seek special accommodations. It does not suggest, however, that the Board is required to ask each examinee on an individual basis whether he or she requires a special accommodation. A title II regulation prohibits public entities from imposing eligibility criteria that would "screen out or tend to screen out" individuals with a disability. *See id.* § 35.130(b)(8) (prohibiting public entity from imposing or applying "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities . . . unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."). Were the Board to query each prospective examinee about his or her disability status, the practice might be questioned on the basis of this regulation.

You also ask, "If special accommodations are requested by the examinee, does the agency or the examinee have the responsibility to suggest the actual details of the accommodations?" The commentary to the title III examination regulation states that an examiner may require examination applicants to provide advance notice and appropriate documentation "of their disabilities and of any

---

[6]There is some dispute among federal district courts regarding the proper standard for determining whether a learning disability rises to the level of a "disability" in the examination context. *See Bartlett*, 156 F.3d 321; *Bartlett v. New York State Bd. of Law Exam'rs*, 2 F. Supp.2d 388 (S.D.N.Y. 1997) (denying defendants' motion for reconsideration).

modifications or aids that would be required." App. B, *supra*, at 615 (analysis of § 36.309). This suggests that the applicant bears the initial responsibility not only to establish that he or she suffers from a disability but also to request and document the need for specific special accommodations. The Board's duty is to respond to specific requests. This is not to say, however, that the Board is precluded from providing information about possible accommodations or from working with examinees to find mutually acceptable arrangements for accommodations.

Your remaining questions about the Board's duty to make accommodations concern costs. Generally, the Board, as opposed to the examinee, must bear the cost of special accommodations. The commentary to the title III examination regulation states that an entity administering an examination "cannot charge the applicant for the cost of any modifications or auxiliary aids, such as interpreters, provided for the examination." *Id.* In addition, the general title II regulation provides that a public entity may not place a surcharge on an individual with a disability to cover costs associated with ADA compliance. *See* 28 C.F.R. § 35.130(f) (1998). As discussed below, however, the federal regulations indicate that a public entity administering an examination may be excused from providing at least some kinds of accommodations that the entity can demonstrate are prohibitively expensive.

You express concern about the cost of special accommodations and about the effect special accommodations may have on the security or integrity of an exam: "If special accommodation(s) requested by the examinee is considered unreasonable because of cost, exam security, or exam integrity, does the agency have the authority to deny the special accommodation(s)?" Speed letter of 8/10/98. While we are not aware of any case law specifically addressing your concerns in the context of an examination administered by a public entity,[7] the ADA regulations and commentary provide general guidance.

The general regulation implementing title II provides that a public entity shall make "reasonable modifications in policies, practices or procedures" when necessary to avoid discrimination on the basis of disability "unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7) (1998). The burden is on the public entity to demonstrate that the modifications "would fundamentally alter the nature of the service, program, or activity." *Id.* This regulation does not provide a defense based on cost.

The title II regulation regarding program accessibility in existing facilities requires a public entity to operate each service, program, or activity so that the service, program, or activity is "readily accessible" to individuals with disabilities. *Id.* § 35.150(a). This regulation also provides, however, that it does not require a public entity to take any action "that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." *Id.* § 35.150(a)(3). Importantly, however, this regulation provides that the

---

[7]*But see* discussion *infra* note 8.

public entity has the burden of proving that compliance would "result in such alteration or burdens." *Id.* In addition,

> [t]he decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity.

*Id.* In short, under title II, if the Board refuses a request for program accessibility in an existing facility, the Board has the burden of proving that the requested special accommodation would fundamentally alter the nature of the examination or would impose an undue financial or administrative burden.

The title III examination regulation provides a similar defense, at least with respect to auxiliary aids. It requires an entity administering an examination to provide auxiliary aids, such as taped examinations, interpreters, or transcribers, unless the entity can demonstrate "that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden." *Id.* § 36.309(b)(3). Again, the burden of proving that the requested auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden rests with the entity administering the examination.

Significantly, the commentary to the title III examination regulation indicates that the fundamental alteration or undue burden defense is limited to the duty to provide auxiliary aids in subsection (b)(3) and does not apply to the regulation's other requirements in subsections (b)(1)(i), (b)(1)(iii), (b)(2), and (b)(4), such as facility accessibility and examination modifications. *See* App. B, *supra*, at 614 (analysis of § 36.309) ("One commenter argued that similar limitations should apply to all of the requirements of § 36.309, but the Department did not consider this extension appropriate."). This suggests that an entity administering an examination may not refuse to make these other kinds of accommodations on any basis. By contrast, the general title II regulation provides that a public entity is not required to alter a program if it can demonstrate that making the modifications "would fundamentally alter the nature of the service, program, or activity," 28 C.F.R. § 35.130(b)(7) (1998), and the title II regulation on existing facilities does not require actions a public entity can demonstrate would result in "a fundamental alteration in the nature of . . . [the] program . . . or in undue financial and administrative burdens," *id.* § 35.150(a)(3). Given these differences, the title II regulations and the title III examination regulation may conflict when applied to a public entity that administers an examination and has received a request for accommodations

other than auxiliary aids. We are not aware of any judicial decision addressing this apparent inconsistency,[8] and we do not resolve it here. In sum, federal regulations clearly permit a public entity that administers an examination to refuse to offer an auxiliary aid if the entity can demonstrate that offering the auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden. The authority of a public entity to refuse requests for other kinds of examination accommodations is less clear.

Finally, you ask if the Board has "any obligation to seek unique solutions" when the cost of a requested accommodation is "prohibitive." Speed letter of 8/10/98. We will assume you ask about an accommodation that an entity is authorized to refuse under the federal regulations on the basis of cost. We are not sure what you mean by "unique solutions." We believe, however, that the fact that the Board can demonstrate that a particular accommodation is unduly burdensome does not excuse it from making other accommodations that would not be unduly burdensome. An analogous title II regulation provides that "[i]f an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity." 28 C.F.R. § 35.150(a)(3) (1998). Again, the Board is not precluded from providing information about possible accommodations or from working with examinees to find mutually acceptable arrangements for accommodations. *See* discussion *supra* page 7 (regarding Board's duty to suggest details of accommodations).

---

[8]The Supreme Court of Florida has suggested that the "fundamentally alters" defense in subsection (b)(3) of the title III examination rule applies to test modifications as well as auxiliary aids. *See Florida Bd. of Bar Exam'rs re S.G.*, 707 So.2d 323, 325 (Fla. 1998). This suggestion is contrary to the language of subsection (b)(3), which is limited to auxiliary aids, and the commentary to the regulation, in which the Department of Justice expressly declines to extend the defense to the regulation's other requirements. *See* App. B, *supra,* at 614 (analysis of § 36.309) ("One commenter argued that similar limitations should apply to all requirements of § 36.309 but the Department did not consider this extension appropriate.").

### S U M M A R Y

The federal Americans with Disabilities Act requires the Texas Board of Professional Engineers, which administers a national engineering examination, to consider prospective examinees' requests for special accommodations. The Board may require an examinee to provide advance notice and documentation of the examinee's disability and need for any accommodation requested. The examinee is responsible for requesting specific accommodations. The Board may seek second opinions regarding such requests.

Generally, the Board must bear the cost of special accommodations. Federal regulations permit a public entity that administers an examination to refuse to offer an auxiliary aid if the entity can demonstrate that offering the auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden. The authority of a public entity to refuse requests for other kinds of examination accommodations is less clear. The fact that a particular accommodation is unduly burdensome does not excuse an entity administering an examination from making other accommodations that would not be unduly burdensome.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General